UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
) No. 01CR405
v. )
) Violations: Title 18
ERNESTO G. MUTUC ) United States Code,
) Sections 152(2), 152(3)
) and 157

JUDGE COAR

MAGISTRATE JUDGE DENLOW

DOCKETED
APR 27 2001

FILED
APR 26 2001
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

COUNT ONE

The SPECIAL JULY 2000-1 GRAND JURY charges:

1. At times material to this indictment:

a. Beginning at least as early as 1993, defendant ERNESTO G. MUTUC occupied an apartment unit at 3410 North Lake Shore Drive, Chicago Illinois, and was employed as a technical consultant for a software design company, with offices in Lisle, Illinois and elsewhere in the United States. Through his employment defendant received as a part of his compensation certain stock options.

b. On May 2, 1994, defendant ERNESTO G. MUTUC was divorced from Individual A, pursuant to a Judgment for Dissolution of Marriage. As part of the Judgment for Dissolution, Individual A was ordered to pay defendant MUTUC $18,000 on or before July 1, 1998.

c. Defendant ERNESTO G. MUTUC maintained a personal money market account no. 0001023276 at Northern Trust Company ("the Northern Trust account").

of that stock through Charles Schwab, Inc, where he had an account. He then received $85,270.10, which he deposited into his Northern Trust account on June 28, 1997.

   ii. On or about July 1, 1997, defendant ERNESTO G. MUTUC wrote a personal check for $7,593. on his Northern Trust Company account payable to the Vilas Development Corporation as earnest money toward the purchase of condominium Unit 16-F, 3410 North Lake Shore Drive ("the Lake Shore Drive Condominium").

   iii. On or about July 29, 1997, defendant ERNESTO G. MUTUC exercised options in stock which he held and sold a portion of that stock through Charles Schwab, Inc. He received $73,455.86, which he deposited into his Northern Trust Company account.

   iv. On or about August 7, 1997, defendant ERNESTO G. MUTUC closed on the purchase of the Lake Shore Drive condominium and paid the seller the full $138,191.36 due on closing, using a cashier's check drawn on the Northern Trust Bank and purchased from his Northern Trust account.

  e. Chapter 7 of the Bankruptcy Code (Title 11 UnitedStates Code) provided that individual debtors without adequate income or assets to pay their debts could petition the United States Bankruptcy Court to obtain a discharge of their prefiling debts, subject to certain exceptions.

  f. The filing of a bankruptcy petition created a "bankruptcy estate" consisting of all legal and equitable interests of the debtor in property as of the commencement of the case. All

the debtor's tangible or intangible property belonged to the estate, including real estate, bank accounts, causes of action, payments resulting from divorce decrees or property settlements and equitable or future interests in property.

g. At the commencement of a Chapter 7 bankruptcy case, a trustee was appointed to assemble the debtor's nonexempt assets and to liquidate them and pay them over, with court approval, to lien holders in order of priority, and then to unsecured creditors, *pro rata*, after deducting certain costs of administration of the bankruptcy estate.

h. The debtor's filing under the Bankruptcy Code of a Chapter 7 Voluntary Petition automatically stayed all collection activity by any creditor, except with the express permission of the Bankruptcy Court and imposed penalties for violation of the stay.

i. The individual filing bankruptcy was required to complete and file, under penalty of perjury, a Petition, a Statement of Financial Affairs and various attached schedules, including Schedule A, Real Property, and Schedule B. Personal Property, and on those filings truthfully disclose, among other things, all assets, including all real and personal property in which the Debtor held any legal, equitable or future interest and all transfers of assets occurring in the year prior to the filing of the bankruptcy.

j. Section 341 of the Bankruptcy Code required each debtor to appear at the First Meeting of Creditors, where creditors and the appointed Chapter 7 Trustee and the United States Trustee

could question the debtor under oath about any matter relevant to the bankruptcy.

k. Rule 2004 of the Bankruptcy Rules required the debtor or any party to the bankruptcy to appear as directed for a deposition under oath, if requested by any party to the bankruptcy.

l. On or about April 7, 1998, defendant ERNESTO G. MUTUC filed a Voluntary Petition in the United States Bankruptcy Court, Northern District of Illinois, Chicago, which case was denominated, *In re Ernesto Mutuc*, Case No. 98 B 10579. A Chapter 7 trustee was appointed to administer the bankruptcy estate of Ernesto Mutuc.

m. On or about May 12, 1998, defendant ERNEST G. MUTUC appeared for an examination under oath pursuant to Section 341 of the Bankruptcy Code.

n. On July 28, 1998, the Chapter 7 Trustee filed a report with bankruptcy court, finding the case *In re Ernesto Mutuc*, Case No. 98 B 10579 to be a "no-asset case." On July 29, defendant ERNESTO G. MUTUC was awarded a discharge of his pre-Petition debts.

o. On or about July 30, 1998 defendant ERNEST G. MUTUC filed a Petition for Rule to Show Cause in the Circuit Court of Cook County, Domestic relations Division, to enforce the order of May 2, 1994, dissolving his marriage and awarding him $18,000 to be paid to him by Individual A on or before July 1, 1998.

p. On or about August 27, 1998, defendant ERNESTO G. MUTUC, deposed under oath in a deposition taken pursuanmt to Rule 2004 of the Banruptcy Code.

4

## THE SCHEME

2. From at least in or about March 12, 1998 and continuing until at least in or about late April 1999, in the Northern District of Illinois, Eastern Division, and elsewhere

ERNESTO G. MUTUC

defendant herein, devised, intended to devise, participated in, a scheme and artifice to defraud his ex-wife, his unsecured creditors, the appointed trustee, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises. The scheme is further described as follows:

3. It was part of the scheme that defendant ERNESTO G. MUTUC, would file a Voluntary Petition and Schedules under Chapter 7, Title 11, *In re Ernesto Mutuc*, Case No. 98 B 10579, on which he would conceal his full ownership interest in the Lake Shore Drive condominium and his purchase of that property through the transfer of funds received by him within the year prior to filing of the bankruptcy by cashing in stock options on June 26 and July 29, 1997.

4. It was further part of the scheme that he would falsely represent that he was paying monthly rent or mortgage payment totaling $803.74 for the Lake Shore Drive condominium.

5. It was further part of the scheme that defendant ERNESTO G. MUTUC would represent in a deposition under oath taken pursuant to Bankruptcy Rule 2004, that the Lake Shore Drive Condominium was his sister's property, based on a document dated November 19, 1994,

5

purporting to transfer to his sister all his interest in the stock options in exchange for unspecified moneys provided to him before and after November 1994.

6. It was further part of the scheme that defendant ERNESTO G. MUTUC would further represent to the Chapter 7 Trustee that the balance of moneys held in the Northern Trust account from the exercise of stock options were his sister's property, based on the documented dated November 19, 1994, purporting to transfer to his sister all his interest in the stock options in exchange for unspecified moneys provided to him before and after November 1994.

7. It was further part of the scheme that defendant ERNESTO G. MUTUC would conceal on his Schedule of Personal Property, Schedule B, the existence of the $18,000 settlement which his wife was obligated to pay him on July 1, 1998.

8. It was further part of the scheme that immediately following the discharge of his debts, on July 30, 1998, defendant ERNESTO G. Mutuc filed suit in the Circuit Court of Cook County against his ex-wife to collect the $18,000 debt due him under the divorce decree.

9. It was further part of the scheme that defendant ERNESTO G. MUTUC would conceal and hide and cause to be concealed and hidden the acts done in furtherance of the fraud.

10. On or about April 7, 1998, at Chicago, in the Northern District of Illinois, Eastern Division,

ERNESTO G. MUTUC,

defendant herein, having devised and intending to devise the above-described scheme to defraud, filed a Voluntary Petition under Chapter 7 of Title 11, United States Code, namely the petition and attached schedules in case No. 98 B 10579, *In re Ernesto Mutuc*, in the United States Bankruptcy Court, Northern District of Illinois;

In violation of Title 18, United States Code, Section 157.

## COUNT TWO

The SPECIAL JULY 2000-1 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates here paragraph 1 of Count One of this Indictment.

2. On or about April 7, 1998, at Chicago in the Northern District of Illinois, Eastern Division,

ERNESTO G. MUTUC,

knowingly filed a false statement, under penalties of perjury, in and in relation to a case under Title 11, United States Code, which defendant did not believe to be true and correct as to every material matter, in that, in a Voluntary Petition and attached Statement of Financial Affairs and Schedules filed in the case entitled *In re Ernesto Mutuc,* No. 98 B 10579:

   a. On Schedule A, Real Property, requiring the debtor to list all real property in which he held any interest, defendant ERNESTO G. MUTUC falsely stated "None", when in fact as he well knew he held all title and interest in a Unit 16 F, 3410 North Lake Shore Drive, Chicago.

   b. On Schedule B, Personal Property, requiring the debtor to list all personal property in which he held any interest, including Question 20, requiring the debtor to list "other unliquidated claims of every nature, including counterclaims of the debtor and rights to set-off claims," and at Question 33, requiring the debtor to list "other personal property of any kind not already listed," defendant ERNESTO G. MUTUC ERNESTO G. MUTUC falsely stated "None," when in fact, as defendant well knew, he had an

unliquidated claim of $18,000, due on or before July 1, 1998 from his ex-wife as part of the divorce settlement.

   c. On the Statement of Financial Affairs, in response to Question 1, requiring the debtor to list gross amount of income received from employment for the two prior years to the filing of the Petition, defendant ERNEST G. MUTUC falsely stated that his gross income for 1997 was $70,620, when in fact, as defendant well knew, his gross income for 1997 was $303,107.65.

   c. On the Statement of Financial Affairs, in response to a question requiring the debtor to list "all other property other than property transferred in the ordinary course of the financial affairs of the debtor,... absolutely or as security within one year immediately preceding the commencement of this case," defendant ERNESTO G. MUTUC answered none, when in fact, as he well knew, defendant had transferred personal funds totaling $146,784.38 between July 7 and August 7, 1997, in full payment of his purchase of the Lake Shore Drive condominum.

   d. On the Statement of Financial Affairs, in response to a question requiring the debtor to list "all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold or otherwise transferred within one year immediately preceding the commencement of this case," defendant ERNESTO G. MUTUC falsely represented that the only such account or instrument closed in the last year was Northern Trust Account No. 0001023276, which he had closed and paid over

$15,914.43 to his sister in November 14, 1997, pursuant to a contract dated November 19, 1994, when in fact as he well knew,

   i. He had not paid $15,914.73 to his sister in November 1997 from the Northern Trust Account; and

   ii. In the year prior to the filing of the Petition, defendant ERNESTO G. MUTUC had exercised options on stock which he held through his employer and sold the stock at Charles Schwab on June 26, 1997 and July 29, 1997, receiving funds totaling $158,725.96.

 In violation of Title 18, United States Code, Section 152(3).

## COUNT THREE

The SPECIAL JULY 2000-1 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates here Paragraph One of Count One of the Indictment.

2. On or about May 12, 1998, at Chicago, in the Northern District of Illinois, Eastern Division,

ERNESTO G. MUTUC,

defendant herein, at an examination under oath at a First Meeting of Creditors pursuant to Section 341 of the Bankruptcy Code, in relation to a case under Title 11, United States Code, in Case No. 98 B 10579, *In re Ernesto Mutuc*, having been placed under oath:

a. In response to a question whether anyone owed the debtor any money, defendant ERNESTO G. MUTIC falsely answered, "No," when in fact, as defenant well knew, he had an outstanding claim for $18,000 from his ex-wife, due to him on or before July 1, 1998, pursuant to their divorce settlement and Judgment of Dissolution.

b. In response to a question asking whether he had transferred any property ... within the last eighteen months, defendant ERNESTO G. MUTUC falsely answered, "No," when in fact, as defendant well knew, he had transferred $146,784.38, between July 7 and August 7, 1997, in payment for the Lake Shore Drive condominium.

c. In response to questions relating the Northern Trust account, defendant ERNESTO G. MUTUC falsely stated that he had

11

given the balance of $15,900 to his sister, when in fact, as defendant well knew, he had made no such payment to his sister.

In violation of Title 18, United States Code, Section 152(2).

## COUNT FOUR

The SPECIAL JULY 2000-1 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates here Paragraph One of Count One of the Indictment.

2. On or about August 27, 1998, at Chicago, in the Northern District of Illinois, Eastern Division,

ERNESTO G. MUTUC,

defendant herein, at a deposition under oath taken pursuant to Bankruptcy Rule 2004, in and in relation to Case No. 98 B 10579, *In re Ernesto Mutuc*, a case under Title 11, United States Code, after being placed under oath knowingly and fraudulently made a false oath and account in that:

    a. In response to a question about the ownership of the Lake Shore Drive condominium, defendant ERNESTO G. MUTUC falsely stated that his sister owed the condominium, when in fact, as defendant well knew he owned the Lake Shore Drive Condominium outright.

    b. In response to a question relating to his claim that he did not own the condominium, defendant ERNESTO G. MUTUC falsely stated that he was paying rent to his sister in the amount of $803.74, and that he had a written lease with her, when in fact as defendant well knew he had no such lease and was not paying rent to

13

his sister;

In violation of Title 18, United States Code, Section 152(3).

A TRUE BILL:

*[signature]*
FOREPERSON

*[signature]*
ACTING UNITED STATES ATTORNEY

No.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

vs.

ERNESTO G. MUTUC

# INDICTMENT

Violation(s): Title 18, United States Code,
Sections 152(2), 152(3), and 157

A true bill,

_____
Foreman

Filed in open court this _____ day of _____, A.D. 2001

MICHAEL W. DOBBINS

_____
Clerk

Bail, $